IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

v.

ABDIRAHMAN SHEIK MOHAMUD,
    a/k/a "Ayanle,"
    Defendant.

No. 2:15-cr-00095
JUDGE GRAHAM

## UNITED STATES SENTENCING MEMORANDUM

The United States of America, by and through the undersigned counsel, submits this Sentencing Memorandum. Defendant Abdirahman Sheik Mohamud ("Mohamud") is before the Court for sentencing, having pleaded guilty to all counts as alleged in an indictment filed on April 16, 2015, for violations of 18 U.S.C. § 2339A, Providing Material Support to Terrorists; 18 U.S.C. § 2339B, Providing Material Support to a Designed Foreign Terrorist Organization; and 18 U.S.C. § 1001(a)(2), False Statement Involving International Terrorism.

Mohamud became a naturalized U.S. citizen to further his plot to eventually fight for the Al-Nusrah Front in Syria, a Designated Foreign Terrorist Organization. Mohamud trained in Syria then returned to the United States to commit a terrorist plot. Mohamud conspired to join his brother fighting in Syria, fought and trained in Syria, then returned to execute a heinous act of terrorism and recruited others to help him. Mohamud covered up his crimes up until the month of his arrest, February 2015, by making false statements to the FBI about his overseas travel and training.

Neither party has any objections to the Presentence Investigation Report (PSR). The PSR

1

correctly states that the U.S. Sentencing Guidelines imprisonment range is life, based on a total offense level of 43 and a criminal history category of VI (as mandated by U.S.S.G. § 3A1.4 in cases involving terrorism). The Guidelines range is 456 months (38 years), according to U.S.S.G. § 5G1.1(c)(1), since the sentence cannot be greater than the authorized statutory maximum. Counts 1 (providing material support to terrorists) and 2 (providing material support to a designated foreign terrorist organization) each mandate a maximum sentence of 15 years and Count 3 (terrorism false statements) has a maximum sentence of 8 years, yielding a statutory maximum of 38 years (456 months). Pursuant to U.S.S.G. § 5G1.2(d), the sentence on each count of conviction shall run consecutively.

The plea agreement supporting Mohamud's plea of guilty specifies that the United States will not request a sentence of more than 23 years imprisonment. The Memorandum discusses Section 3553(a) factors and the law of merger regarding Counts 1 and 2. Ultimately, the government requests a sentence of 23 years imprisonment, before any other motions may be heard.

## I. BACKGROUND

### A. Terrorist Acts

Mohamud was born in Somalia on September 1, 1991, and entered the United States in August of 1993. Mohamud and his brother, Abdifatah Aden ("Aden") resided in Columbus, Ohio, until Aden departed the United States in May 2013. Beginning in August 2013 Aden joined and fought for the Al-Nusrah Front ("Al-Nusrah"), a terrorist organization related Al-Qa'ida, in Syria. In September 2013, Mohamud sent his brother in Syria a message pledging to join Aden as an overseas foreign fighter. Mohamud wrote a social media message affirming:

"In the name of Allah, the Most Gracious, Most Merciful. Salam be on you and your blessed companions Al Mujahideen (Arabic for "religious war fighters") I'm proud of you….Allha (Arabic for "God") loves the simple soldier so be a simple soldier, even if that means that no one knows who you are. All praise is to Allah who has allowed my Brother to fight in his cause. Abdifatah please know that you are fullfulling a glorious act that many of us have failed in, know that everytime you shoot your rifle, you are that much closer to Jannah (Arabic for "heaven" or "paradise") so shoot and be true to Allah inn Shaa Allah I conclude with a simple piece of advise (sic), be Patient and be Humble, make dua (an invocation) to Allah to allow me to join you in the high ranks as a Mujahid (Arabic for a person who wages jihad or war) inn Shaa Allah remain, steadfast and think of Allah 24/7. WaSalam love Abdirhaman."

In early 2014, Aden and Mohamud coordinated Mohamud's travel into Syria and made plans for Mohamud to join Aden in Syria. Mohamud was to gather funds for Aden and travel with a communication device to give Aden for his use in support of terrorist activity. Mohamud's planning included obtaining a U.S. passport and airline ticket, assembling $1000 for Aden, opening a bank account and purchasing an internet – accessible device.

In furtherance of Mohamud and Aden's plan, on February 18, 2014, at the U.S. District Courthouse in Columbus, Mohamud took an oath of allegiance at a naturalization ceremony and became a U.S. citizen. A week later, Mohamud submitted an application to obtain a U.S. passport, which was issued in March 2014.

On April 8, 2014, Mohamud purchased a one-way ticket to Athens, Greece via Istanbul, Turkey. Mohamud never boarded the connecting flight from Istanbul to Athens, as Mohamud's true destination was Turkey.

**B.     Overseas Terrorism**

On April 18, 2014, Mohamud left the United States destined for Turkey for the purpose of fighting in Syria, as planned, and providing material support to Al-Nusrah. Mohamud disembarked his flight in Istanbul, Turkey never intending to board his connecting flight to Greece. Mohmud's purchase of a ticket to Athens, Greece via Istanbul, Turkey was a tactic designed to distract authorities as to the true nature of Mohamud's destination.

Upon Mohamud's arrival in Turkey, and throughout the next week, Mohamud and his brother Aden communicated with Al-Nusrah aligned facilitators who could smuggle Mohamud from Turkey into Syria.

On April 25, 2014, Aden confirmed with an associate that he and his brother Mohamud were in Syria. That same day, the travel facilitators confirmed in communications that Mohamud was with al-Nusrah and that Mohamud completed the task of delivering $1000 for Aden. In a social media message about Mohamud the Al-Nusrah linked facilitators stated, "This guy entrusted me with something for his brother, Add-al-Fattah." The communication confirms the "thing" was "$1,000," which one of the facilitators confirmed would be delivered to "them." One facilitator wrapped up the communication by asking, "who is the guy (Mohamud) with now?" and the other replied, "the Front" "Nusrah."

While in Syria, Mohamud was trained on weapons and tactics. The Al-Nusrah terrorist organization showed Mohamud how to use weapons and perform combat tactics. Mohamud's training included how to enter a structure and kill persons inside.

While overseas, Mohamud researched a terror plot to be executed in the United States. That included searching information on U.S. federal inmate Dr. Aaffia Siddiqui, who was serving an

86-year federal sentence for attempting to kill Americans. At the time, Dr. Siddiqui's conviction and imprisonment at a federal facility in Texas was a rallying point for Al-Qa'ida and other terrorist groups. Mohamud also researched details of Dr. Siddiqui's imprisonment and the federal facility in Texas at which she was held.

Aden was killed fighting in Syria on about June 3, 2014. There is no evidence the two brothers met face-to-face in Syria.

### C. The Homeland Plot

On June 8, 2014, Mohamud returned to the United States with a plot to kidnap and murder U.S.-based soldiers and began to recruit others in his terrorist scheme. Mohamud's plan in the United States was to lay-low, recruit others and gather weapons to kill government employees and those in uniform. Mohamud's plan was to execute "something big" like travelling to Texas, where Dr. Siddiqui was being held, capturing three or four soldiers and killing them execution style.

On September 5, 2014, Mohamud and three other men went to a central Ohio shooting range. Mohamud instructed two of the men on how to shoot a handgun by showing them how to grip, point and shoot a handgun at targets.

Around Thanksgiving 2014, Mohamud booked a flight from Columbus, Ohio to Dallas/Ft. Worth, Texas for travel that same month. Mohamud never took that flight.

### D. The Cover-Up

The FBI interviewed Mohamud on February 3, 2015. Mohamud hid his terrorist activity, and the involvement of others, by misrepresenting to the FBI that during an overseas trip from April to June 2014, Mohamud did not leave the city of Istanbul, Turkey. Mohamud had in fact traveled to Syria and received training from Al-Nusrah.

5

Mohamud was arrested on February 21, 2015, and has remained in custody since that time. Recorded jail telephone calls between Mohamud and a person close to him, reveal that Mohamud instructed others, "to keep their mouths shut." Mohamud characterized the situation as a "domino effect, and if one falls, everyone falls." To another person, Mohamud instructed, "The thing to be [is] silent, keep your cool, you know what I am saying?" Mohamud added, "be silent, even if the person you are talking to is [your/a] lawyer."

## II. LAW AND ARGUMENT

### A. The Guidelines Benchmark Was Correctly Calculated Consistent with the Statutory Maximums

The United States concurs with the factual conclusions in the PSR. Further, the government agrees that the total offense level of 43, based on a criminal history category of VI, triggered since Mohamud's case involved and promoted terrorism, is consistent with the Guidelines and statutory maximums.

Although the Supreme Court rendered the Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court is still required to "consult [the] Guidelines and take them into account when sentencing." *United States v. Pugh*, 515 F.3d 1179, 1188 (11th Cir. 2008) (*quoting Booker*, 543 U.S. at 264). The Supreme Court has directed district courts to "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." The "Guidelines should be the starting point and the initial benchmark," but the sentencing court must also consider the § 3553(a) factors in determining the appropriate sentence. *Nelson v. United States*, 555 U.S. 350, 351 (2009).

As this Court is well aware, after *Booker*, district courts should engage in a three-step sentencing procedure. *Booker*, 543 U.S. 220 (2005). As indicated above, the Court must determine the applicable Guidelines range, and in so doing, the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence. Second, the Court must consider whether a departure from the Guidelines range is appropriate. Third, the Court must consider the applicable Guidelines range, along with all of the factors listed in section 3553(a), and determine the sentence to impose. *Id*.

"Ultimately, however, *Booker* requires that the sentence imposed by the district court be reasonable." *United States v. Jackson*, 408 F.3d 301, 304 (6th Cir. 2005) (citing *Booker*, 543 U.S. at 260). Reasonableness is assessed in two ways: procedurally and substantively. *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). The Court must "provide a reasoned explanation for its choice of sentence and its explanation must be sufficiently thorough to permit meaningful appellate review." *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006). In determining substantive reasonableness, the circuit court reviews a sentence and assesses whether the length is reasonable in light of the factors listed in 18 U.S.C. § 3553. *United States v. Yopp*, 453 F.3d 770, 774 (6th Cir. 2006).

A within-Guidelines sentence is deemed presumptively reasonable. *Rita v. United States*, 551 U.S. 338, 349–54 (2007) (holding that a federal appellate court may apply a non-binding presumption of reasonableness to a within-Guidelines sentence). However, it is a rebuttable presumption of reasonableness, not a *per se* presumption. *United States v. Richardson*, 437 F.3d 550, 554 n.2 (6th Cir. 2006). Appellate courts, of course, remain responsible for reviewing all

7

sentences for reasonableness. *Booker*, 543 U.S. at 260.

B.  **The § 3553(a) Factors Support Imposition of a Significant Sentence**

Review of the applicable statutory sentencing factors codified at 18 U.S.C. § 3553(a) supports the imposition of a significant sentence for Mohamud's terrorist activity and his subsequent effort to conceal such activity by making false statements to law enforcement. Section 3553(a)(2) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. Under Section 3553, those purposes are set forth as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. 3553(a)(2)(A)–(D). Section 3553(a) further directs the Court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *Id.* at 3553(a).

After *Booker*, all defendants are free to argue mitigating characteristics about themselves,

their families, their life's work and intentions, or the facts of their cases that have previously been forbidden from consideration by a strict interpretation of the Guidelines. *Id.* at 3553(a)(1). Recognizing that most of the arguments under this heading will come from the defendants themselves, the United States will respond, if needed, to such arguments at the time of sentencing. Here, the United States requests a sentence that comports with the central command of 18 U.S.C. § 3553(a)—that sentencing courts are to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of punishment. *Id.* at 3553(a).

### 1. Nature and Circumstances of the Offense

Mohamud engaged in terrorist activity overseas, which included training and fighting with the Al-Nusrah Front, a designated foreign terrorist organization. He then returned to the United States with a plan to do grievous harm, recruited others to help him in his homeland plot, and then planned and prepared for attacks in the United States. Once caught, he orchestrated a cover-up beginning with his material misstatements to the FBI.

As the facts show, the nature and circumstances of the offense in this case are incredibly serious. The United States submits that a sentence of 23 years imprisonment, before being heard on any other motions, is necessary to account for the serious nature and circumstances of the offense.

### 2. History and Characteristics of the Defendant

The PSR accurately notes that Mohamud has only one criminal history point. However, under U.S.S.G. § 3A1.4(b), Mohamud's crime involved, or was intended to promote, a federal crime of terrorism, his criminal history category is Category VI.

### 3. The Statutory Purposes of 3553(a)

*a. To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

One of the factors the Court must consider in imposing sentence under 18 U.S.C § 3553(a) is the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A).

*b. To Afford Adequate Deterrence to Criminal Conduct*

Another factor the Court must consider in imposing sentence under 18 U.S.C. § 3553(a) is the need for the sentence to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). In this case, the Court's sentence will deliver a message of specific deterrence to Mohamud, but also to other similarly situated individuals who may consider such acts and deserve a message of general deterrence from terrorist criminal conduct. In the terrorism context, the general deterrent effect for other would-be offenders cannot be overstated.

## III. CONCLUSION

The plea agreement supporting Mohamud's plea of guilty specifies that the United States will not request a sentence of more than 23 years imprisonment. The Memorandum discusses the facts of this case and the Section 3553(a) factors. Ultimately, the government requests a sentence of 23 years imprisonment, before any other motions may be heard.

Respectfully submitted,
BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF OHIO

s/Douglas W. Squires
DOUGLAS W. SQUIRES (0073524)
JESSICA H. KIM (0087831)
Assistant United States Attorneys
Southern District of Ohio

s/Joseph Gibson
JOSEPH MILES GIBSON, JR. (0084587)
Special Assistant United States Attorney
Southern District of Ohio

s/Lolita Lukose
LOLITA LUKOSE (4176467 NY)
Trial Attorney
Counterterrorism Section
National Security Division
United States Department of Justice

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served electronically this 14th day of August, 2017, on opposing counsel.

s/ Douglas W. Squires
DOUGLAS W. SQUIRES
Assistant U.S. Attorney
Southern District of Ohio
